**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Crystal Mae Claw-Manson,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-08197-PCT-DWL

**ORDER**

Plaintiff challenges the denial of her applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 14), and Plaintiff's reply (Doc. 15), as well as the Administrative Record (Doc. 8, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I. <u>Procedural History</u>

In December 2019, Plaintiff applied for benefits, alleging a disability onset date of June 1, 2019. (AR at 155.) In a decision issued on March 19, 2021, an ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled. (*Id.* at 155-63.)

As relevant here, in March 2022, Plaintiff filed new applications for benefits, alleging a disability onset date of September 20, 2019. (*Id.* at 17.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels. (*Id.*) On July 11, 2024, following a telephonic hearing, the ALJ issued another

unfavorable decision. (*Id.* at 17-30.) The Appeals Council later denied review. (*Id.* at 1-3.)

II. The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse

an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "right ankle fracture status post ORIF and hardware removal, right distal fibula bone cyst status post excision of bone cyst, right ankle arthritis and hyperesthesia of the right lower leg and ankle." (AR at 20-21.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 23.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following additional limitations: The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally reach overhead. The claimant can frequently handle and finger. The claimant can occasionally be exposed to extreme temperatures, vibration, and workplace hazards, such as unprotected heights and moving mechanical parts. The claimant can interact with supervisors, coworkers and the public occasionally.

(*Id.* at 23.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. The undersigned acknowledges the claimant has the above noted impairments, which result in work related restrictions, but these limitations have been accounted for in the residual functional capacity and do not support a finding that the claimant is precluded from performing all work related activity." (*Id.* at 24.) The ALJ also evaluated opinion evidence from various

[1] The ALJ also determined that Plaintiff had the non-severe impairments of obesity, anxiety, and depression. (AR at 21-23.)

medical sources, concluding as follows: (1) Jeremiah D. Isbell, Psy.D. ("persuasive"); (2) Melissa Carone, FNP ("persuasive"); and (3) state agency medical consultants' prior administrative medical findings, at the initial and reconsideration levels ("persuasive"). (*Id.* at 26-28.) Additionally, the ALJ considered a third-party function report from Plaintiff's friend, which the ALJ deemed "consistent with [Plaintiff's] subjective complaints but it is not supported by the greater objective medical evidence of record." (*Id.* at 25-26.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff could not perform any of her past relevant work, she was capable of performing three jobs that exist in significant numbers in the national economy: (1) nut sorter; (2) escort vehicle driver; and (3) polisher (eyeglass frames). (*Id.* at 28-30.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 30.)

IV. Discussion

Plaintiff raises only one issue on appeal: whether the ALJ failed to provide legally sufficient reasons for rejecting her symptom testimony. (Doc. 12 at 2.) Plaintiff contends that "[r]emand for calculation of benefits would be an appropriate remedy in this case. Only in the alternative should this Court remand for further administrative proceedings." (*Id.* at 24.)

A. **Standard Of Review**

Under Ninth Circuit law, an ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

**B. Plaintiff's Symptom Testimony**

As summarized in the ALJ's decision, Plaintiff "testified she has constant chronic daily pain in her feet, ankles and legs. She testified she has severe pain in her ankles. She testified she uses her walker 'everywhere' and could stand, without a walker, for 'Not that long'. [Plaintiff] testified she has trouble bending over. She has pinched nerves so she cannot stand for long. She testified the severe pain can last up to 8-12 hours. For relief, she sits by elevating her legs. She stated that cold weather cramps up her body. She has to push herself to walk. [Plaintiff] testified she cannot drive because her fingers cramp up and she cannot make stops with the brakes due to her right ankle. She testified she cannot sit for long periods of time. She can sit for 10-15 minutes at one time before she gets up. [Plaintiff] testified gets 2-3 hours of sleep, due to the pain. For treatment, [Plaintiff] testified she attends physical therapy once a week. She has received nerve blocks under her knees and nerve injection in her ankle, which helps for 1-2 days. [Plaintiff] testified she lives with her parents, which she cannot provide for herself. [Plaintiff] has children, ages 16 and 21. She testified she cannot cook because she cannot stand for too long. She testified she is unable to grocery shop. She testified she used to draw, for a hobby. [Plaintiff] testified she cannot sit on the bleachers when she attends her son's games." (*Id.* at 24.)

**C. The ALJ's Evaluation Of Plaintiff's Symptom Testimony**

When analyzing Plaintiff's symptom testimony, the ALJ began by summarizing various treatment records. (*Id.* at 24-25.) After summarizing those records, the ALJ wrote: "Taking all of the factors into consideration, the undersigned finds that [Plaintiff] has some limitations due to her ankle, leg and back pain; however, [the RFC] has accommodated these limitations by restricting [Plaintiff] to sedentary work that does not require more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." (*Id.* at 25.)

The ALJ also addressed Plaintiff's claim that she "uses a walker every day." (*Id.*) The ALJ noted that Plaintiff was observed without a walker during one exam in March

2023; that certain treatment notes suggested that the walker was not "needed for all ambulation" and was simply to be used at home during times of pain; and that other treatment notes reflected that Plaintiff had a normal or steady gait, normal range of motion, and no muscle or joint tenderness. (*Id.*) "As such, the evidence shows [Plaintiff] is able to ambulate effectively without the use of a walker." (*Id.*)

D. **The Parties' Arguments**

Plaintiff argues that the "ALJ committed materially harmful error by rejecting [her] symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole." (Doc. 12 at 16.) According to Plaintiff, "[t]he ALJ's general medical summary and overall conclusion that [her] symptom testimony was unsupported and/or 'not entirely consistent' with the record, does not satisfy the agency's requirements" because "[t]he ALJ spent only two paragraphs of a 14-page decision providing a limited summary of the medical evidence and failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [her] work preclusive symptom testimony." (*Id.* at 16-17.) Plaintiff contends that although the ALJ's medical summary noted some normal examination findings, "these normal examination findings failed to show an inconsistency with [her] symptom testimony that she suffered from chronic pain with episodes of severe pain that required over fifteen emergency room visits since March 2021." (*Id.* at 18-19, emphasis omitted.) Plaintiff also contends that "this record provided ample objective evidence supportive of [her] symptom testimony related to chronic pain, severe episodes of pain, and related limitations in sitting, standing, walking, and lifting, including that she had tenderness over her right ankle, hyperalgesia at her right ankle and leg, intermittent swelling at her right ankle, painful/limited movement of the right ankle, decreased strength at the right lower extremity, limited/painful lumbar motion, tenderness at the lumbar spine, positive straight leg raise testing on the right, and skin discoloration and decreased hair growth at the right ankle and temperature changes characteristic of CRPS [Complex Regional Pain Syndrome, type II]." (*Id.* at 19.) As for the ALJ's observation that imaging of Plaintiff's "right ankle

. . . showed an old/healed fracture without any acute injuries," Plaintiff argues that "[t]his just demonstrates the ALJ's misunderstanding and exclusion of CRPS as a severe impairment in [Plaintiff's] case. One does not have to have ongoing fractures/injury to a specific extremity to suffer from CRPS symptoms, instead CRPS occurs after an injury to a bone or soft tissue . . . and manifests as intense pain and abnormalities of the skin in the area—both of which examinations repeatedly show for [Plaintiff]." (*Id.* at 19-20.) Next, Plaintiff contends that her daily activities and isolated instances of improvement from a spinal cord stimulator and from lumbar medial branch blocks were not discrediting. (*Id.* at 20-22.) Finally, as for her use of a walker, Plaintiff argues that "the specifics of [her] need and use of a walker are not crucial to this case and also failed to rise to a specific, clear and convincing reasons to reject [her] work-preclusive testimony given the nature of [her] severe CRPS flare-ups, and the confirmation from the vocational expert that an individual's need for full-time walker use would not preclude sedentary work." (*Id.* at 23.)

In response, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints." (Doc. 14 at 3.) The Commissioner begins by arguing that "[t]he objective medical evidence was inconsistent with Plaintiff's subjective statements." (*Id.* at 3-4.) The Commissioner elaborates: "Despite Plaintiff's allegations of debilitating ankle pain, imaging comparisons showed 'minimal degenerative changes.') (*Id.* at 4.) Next, the Commissioner argues that "although Plaintiff alleged that she required using a walker everywhere and could not stand long without one, the ALJ reasonably found 'no indication of a continuing need for walker.'" (*Id.*) Next, the Commissioner argues that "the ALJ reasonably found that Plaintiff's documented improvements undercut the alleged severity of Plaintiff's subjective symptoms." (*Id.* at 5.) The Commissioner notes that "[a]t Plaintiff's April 2024 hearing, Plaintiff indicated that her pain treatments have been ineffective. But she reported significantly better outcomes to her providers. In particular, Plaintiff obtained a spinal cord stimulator and 'was pleased with her response,' even initially reporting '100% relief' of her complex regional pain syndrome." (*Id.* at 5-6.) The Commissioner adds: "Plaintiff argues further that the ALJ

misunderstood CRPS. But this simply overlooks the remarkable CRPS improvements Plaintiff reported with treatment." (*Id.* at 6.) Next, the Commissioner argues that "the ALJ found Plaintiff could engage in activities of daily living that showed she was more capable than alleged," because "Plaintiff testified that she was dependent on others, even with routine activities such as cooking and bathing" and this testimony "was strikingly at odds with treatment notes that showed Plaintiff was 'able to care for [her]self' and 'walks without restrictions.'" (*Id.* at 6-7.) Last, the Commissioner contends that the ALJ's reasoning was sufficiently specific because "it was readily discernable that the ALJ found Plaintiff was capable of more activities than she alleged based on a variety of treatment records." (*Id.* at 7.)

In reply, Plaintiff reiterates her earlier argument that "[t]he ALJ failed to connect anything specific in his two-paragraph limited medical summary with a specific inconsistency with any particular portion of [her] preclusive symptom testimony" (Doc. 15 at 4-5); reiterates her argument that the ALJ improperly "focus[ed] on some normal examination findings without explaining how some normal findings showed an inconsistency" (*id.* at 5); once again argues that "[t]he specifics of [her] need and use of a walker are not crucial to this case" (*id.* at 5 n.4); argues that the Commissioner "simply repeated reports of ankle imaging, but this does not defend the ALJ's error in playing doctor while ignoring [her] CRPS" (*id.* at 6); reiterates that any improvement she experienced from treatment was temporary (*id.* at 6-7); and argues that her ability to take care of herself and walk was not inconsistent with her "specific work-preclusive testimony" (*id.* at 7-8).

E. **Analysis**

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony. The most straightforward basis for affirmance is the ALJ's decision to discredit Plaintiff's testimony because she provided exaggerated details concerning her need to use a walker. During the hearing, Plaintiff answered "Yeah" when asked whether she "ambulate[s] with a walker everywhere" and testified that she is able to stand without a walker for "[n]ot that long." (AR at 49-50.) But as the ALJ correctly noted (AR at 25),

the record is replete with evidence that may be rationally viewed as contradicting this testimony. For example, during an emergency room visit in January 2022, Plaintiff was observed as having a "[s]teady gait" and "[m]oving all extremities well." (*Id.* at 910.) During an annual examination in January 2023, Plaintiff was observed with "[n]ormal gait and station." (*Id.* at 1413.) During a consultative examination in March 2023, Plaintiff was again not using a walker, and when the examiner questioned her about its absence, she stated that "usually she uses a walker but her mom moved it and she can't find it today." (*Id.* at 1152.) And during an emergency room visit in July 2023, Plaintiff "was able to walk . . . from triage to bed [with] no distress or need for assistance" and had full range of motion, no muscle or joint tenderness, 5/5 strength, and was moving all extremities well. (*Id.* at 1601-02.) Additionally, the relevant medical records reflect that Plaintiff was only prescribed a walker for a limited purpose—namely, "for ambulation at home during times of pain" (*id.* at 738) and/or "during her severe pain episodes" (*id.* at 1422)—and not for constant use.

On this record, it was rational for the ALJ to conclude that Plaintiff provided exaggerated walker-related testimony in an effort to portray herself as more limited than she actually is. The Ninth Circuit has repeatedly held that exaggerated testimony of this sort is a permissible basis for discrediting a claimant's symptom testimony. *See, e.g.*, *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (concluding that "the ALJ did offer clear and convincing reasons for rejecting Verduzco's testimony" where "the ALJ noted that the appellant had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk" and "two doctors had specifically noted that the appellant did not need such a device"); *Donathan v. Astrue*, 264 F. App'x 556, 558 (9th Cir. 2008) (concluding "the ALJ provided clear and convincing reasons for rejecting Donathan's subjective allegations" where the ALJ "offered several reasons supporting the adverse credibility determination, including . . . inconsistencies regarding Donathan's need for use of a cane or scooter").[2]

[2] *See also Victoria W.O. v. Colvin*, 2025 WL 5144785, *4 (C.D. Cal. 2025) ("[T]he ALJ was permitted to infer that the extreme limitations alleged by Plaintiff—that she could

Notwithstanding all of this, Plaintiff argues that the ALJ erred because "[t]he specifics of [her] need and use of a walker are not crucial to this case." (Doc. 12 at 23; Doc. 15 at 5 n.4.) This argument is unavailing. As the Court observed when rejecting a similar argument in another Social Security appeal: "Plaintiff cites no authority for the proposition that a Social Security claimant has *carte blanche* to provide exaggerated claims so long as the exaggerated impairments are not the 'main' focus of the disability claim. Nor would such a rule make sense. It is an accepted and common-sense principle that a factfinder may choose to discount all of a witness's testimony once the factfinder has determined the witness made a deliberately exaggerated claim." *Pryor v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1672553, *6 (D. Ariz. 2024). *See generally Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider . . . ordinary techniques of credibility evaluation, such as . . . other testimony by the claimant that appears less than candid . . . .") (citation omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (identifying a "tendency to exaggerate" as a "specific and convincing reason[] . . . for

---

not stand without an assistive device, and, even with one, could walk no more than five minutes—were inconsistent with her ability to ambulate without a cane during the examination, albeit with an antalgic gait, as well as heel-toe walk, bend and crouch, and squat to some degree. Courts have concluded similarly in analogous circumstances.") (citations omitted); *Sawnick v. Comm'r of Soc. Sec. Admin.*, 2023 WL 7538979, *6-7 (D. Ariz. 2023) ("During the hearing, Plaintiff testified that he 'need[s] to use a cane' because he's 'not able to stay balanced' and that he 'use[s] a cane when [he] walk[s].' However, the ALJ correctly noted that Plaintiff was often observed not using a cane during post-onset medical appointments. . . . It was thus rational for the ALJ to conclude that Plaintiff had made inaccurate or exaggerated statements regarding his need for a cane (and to discount Plaintiff's credibility on that basis).") (citations omitted); *Krider v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6227726, *13 (D. Ariz. 2023) ("In her function report, Plaintiff checked a box indicating that she used a cane. Likewise, Plaintiff told the consultative examiner that 'she does occasionally use a cane to assist with ambulation that she obtained on her own.' However, the consultative examiner noted that Plaintiff 'presented to the appointment with no cane.' The ALJ also identified multiple other records in which there was 'no documentation of assistive device use by providers.' On this record, it was rational for the ALJ to conclude that Plaintiff had made inaccurate or exaggerated statements regarding her cane use and to discount Plaintiff's credibility on that basis.") (citations omitted); *Washington v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6140099, *13 (D. Ariz. 2023) ("[I]t was rational for the ALJ to conclude that Plaintiff had made inaccurate or exaggerated statements regarding her cane usage and to discount her credibility on that basis."); *Doyle v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4354608, *6 (D. Ariz. 2022) ("Although Plaintiff testified that she uses a cane 'as an everyday thing,' not for the entire day but starting in 'the midday' and continuing 'for the rest of the day,'" the ALJ correctly noted that Plaintiff 'did not use it [a cane] at the independent medical examination or at other appointments.'") (citations omitted).

discrediting [a claimant's] testimony"); 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 9th day of September, 2026.

Dominic W. Lanza
United States District Judge